UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

REYNA MERCEDES ALCERRO-FLORES, Petitioner,

v. Civil Action No. 4:26-cv-510-RGJ

JASON WOOSLEY, et al.,

* * * * *

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] and motion to expedite [DE 11] filed by Petitioner Reyna Mercedes Alcerro-Flores ("Petitioner"). The United States ("Respondents")[1] responded [DE 6], and Petitioner replied [DE 8]. This matter is ripe. For the reasons below, Petitioner's Petition for Writ of Habeas Corpus [DE 1] and motion to expedite [DE 11] are **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Honduras. [DE 6 at 28]. She entered the United States at the Hidalgo Port of Entry in Hidalgo, Texas, on or about October 31, 2024. [*Id.*]. Petitioner was served with a Notice to Appear and paroled. [*Id.*]. An Immigration Judge ("IJ") later ordered her parole terminated on April 16, 2025. [*Id.*].

On October 16, 2025, Petitioner was arrested by the Lagrange County (Indiana) Sheriff's Office. [*Id.*]. DHS issued a warrant for Petitioner's arrest and she was taken into custody by ICE on January 15, 2026. [*Id.*]. On April 9, 2026, an IJ determined that Petitioner is removable, denied Petitioner's request for asylum, denied withholding of Removal under INA§ 241(b)(3) and the

[1] 28 U.S.C. § 517 allows the Office of the United States Attorney to make appearances in court to attend to the United States' interests. Respondents submitted responses in this case to attend "to the United States' interests to the extent that the petition also names a county official as a respondent." [DE 16 at 136 n.1].

Convention Against Torture, and ordered Petitioner's removal to Honduras. [*Id.*]. Petitioner appealed. [*Id.* at 29]. She is currently detained at the Grayson County Detention Center in Leitchfield, Kentucky, and filed this Petition on July 27, 2026, requesting "immediate release from custody," or, "[i]n the alternative . . . a bond hearing be ordered by a neutral immigration judge." [DE 1 at 5, 13].

## II. DISCUSSION

Respondents argue that Petitioner is an "arriving alien" subject to mandatory detention under section 1225(b)(2). [*See* DE 6 at 30].[2] Petitioner concedes that she is "arriving alien" but "is not presently or currently 'arriving' or 'seeking' entry into the United States" and thus the Sixth Circuit's recent holding in *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), is controlling.

### A. Petitioner is detained under Section 1226(a), not Section 1225(b)(2)

In *Lopez-Campos v. Raycraft*, the court of appeals held that mandatory detention of certain noncitizens "already present in the United States" who were not "seeking admission" was unlawful, and that the petitioners were properly detained, if at all, pursuant to § 1226(a). *Lopez-Campos*, 175 F.4th at 732 (explaining "§ 1226 applies to aliens already present in the United States" and "creates a default rule for those aliens . . . .").

Nevertheless, Respondents contend that *Lopez-Campos* is inapplicable because the question before the Sixth Circuit was whether aliens that entered without inspection were either detained under 8 U.S.C. § 1225(b)(2) or § 1226(a). [DE 6 at 29]. According to Respondents,

> Prior to this 1225/1226 controversy, there were already several pre-existing categories of aliens that have always been subject to mandatory detention as a matter of blackletter immigration law and have been so for decades. As such,

[2] [*But see id.* at 27 (claiming "Petitioner is . . . detained under 8 U.S.C. § 1225(b)(1)(B)(ii)"). Because Respondents' reference to 8 U.S.C. § 1225(b)(1)(B)(ii), which applies to noncitizens detained "detained for further consideration of the application for asylum" and appears to be a scrivener's error, and because Respondents do not develop this alternate theory of detention, the Court deems this argument waived.

> detainees in these categories are not considered detained under § 1226(a) and are not covered by *Lopez-Campos*.

[*Id.* at 30]. This includes the category of "Arriving aliens that present themselves at ports of entry, regardless of grants of parole, are detained under § 1225(b)(2)." [*Id.*].

Tellingly, however, Respondents cite no cases in the decades "prior to this 1225/1226 controversy" applying this "blackletter immigration law" in the same circumstances at bar. [*Id.*]. Were it so simple, there would be little reason for the dispute in district courts across the country regarding whether ICE rightly claims the authority Respondents insist it has always had.[3] *See, e.g., Sananes Hernandez v. Leyva*, No. 4:26-CV-00054-DN, 2026 WL 1948965, at *5 (D. Utah July 6, 2026) ("Recent litigation has highlighted a dispute regarding DHS's authority to re-detain parolees under 8 U.S.C. § 1225(b)(2) following the termination or expiration of their parole."); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 309 (E.D.N.Y. 2025) ("Although Rodriguez-Acurio is an applicant for admission, she clearly is not presenting herself at the border and was not recently apprehended just after entering, and thereby is not 'seeking admission' under Section 1225(b)(2)."), *appeal dismissed*, No. 26-219, 2026 WL 1208948 (2d Cir. Feb. 25, 2026); *Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *11 (S.D.N.Y. Dec. 17, 2025) (collecting cases holding that "any determination as to [former parolee noncitizen's] detention must be conducted under the discretionary framework of Section 1226(a), which 'governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal'"); *Estebesov v. Olson*, No. 26-CV-1165, 2026 WL 1229622, at *3, n.2 (N.D. Ill.

[3] The unsettled state of the law is likely because, until the current executive administration, DHS often did not routinely pursue enforcement or detention actions against such parolees. *See* DHS Office of Inspector General, *DHS Needs to Improve Oversight of Parole Expiration for Select Humanitarian Parole Processes*, Report, No. OIG-25-30 (July 3, 2025) (finding that DHS lacked a well-defined process for addressing parole expirations and "did not initiate enforcement actions for parolees whose parole expired."); *see also* GAO Report, GAO-26-107765.

May 5, 2026) (holding "[t]he plain language of the relevant statute provides that upon termination of his parole, Petitioner was subject to mandatory detention under § 1225(b)" and noting that "the Fifth and Eighth Circuits adopted this minority view").

Instead, Respondents' argument rests on the application of a legal concept known as the "entry fiction" doctrine. [DE 6 at 31]. As the Sixth Circuit has explained, "[t]his paradox of paroling aliens into the United States yet refusing to recognize their 'entry' into the United States has been termed the 'entry fiction' by some courts." *Rosales–Garcia v. Holland*, 322 F.3d 386, 391 n.2 (6th Cir. 2003). The doctrine stems from the notion that "an alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). In *Mezei*, the Supreme Court created an "entry fiction," which extended this distinction to some individuals in the interior of the United States but who, as a result of their status, are deemed technically on the threshold of entry. *Id.*

As Respondents note, the entry fiction doctrine is reflected in the relevant federal regulation. Regulation defines an "arriving alien" as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. *An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act* [codified at 8 U.S.C. § 1182(d)(5)(A)], *and even after any such parole is terminated or revoked.*

8 C.F.R. 1001(q) (emphasis added). Indeed, as Respondents note, the Sixth Circuit has stated in dicta that "an arriving alien remains an arriving alien even if paroled . . . and even after any such parole is terminated or revoked." *Rais v. Holder*, 768 F.3d 453, 456 n.4 (6th Cir. 2014) (citing 8 C.F.R. § 1001.1(q)). Moreover, "[w]hen a Section 1182 humanitarian parole terminates, 'the alien

shall forthwith return or be returned to the custody from which he was paroled[,] and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Daza v. Albarran*, No. 25-cv-10214-RFL, 2026 WL 81518, at *3 (N.D. Cal. Jan. 12, 2026) (quoting 8 U.S.C. § 1182(d)(5)(A)). *Cf. Martinez v. U.S. Atty. Gen.*, 577 F. App'x 969, 973 (11th Cir. 2014) (citing 8 C.F.R. § 212.5(e)) ("When parole is terminated, the paroled alien is restored to the status that he or she had at the time of parole and becomes subject to removal proceedings.").

Thus, Respondents conclude, upon termination of Petitioner's parole, all the circumstances which require applying § 1225(b)(2) were necessarily met: Petitioner was restored to (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2).

This Court has recently rejected substantially the same argument by Respondents in *Guerra v. Mullin*, No. 4:26-CV-430-RGJ, 2026 WL 3027146, at *5 (W.D. Ky. Oct. 8, 2026) (holding "§ 1226(a), and not § 1225, applies to noncitizens such as [Petitioner], who remain in the country after their parole expires"). None of Respondents' additional arguments alter the Court's analysis here.

Respondent's reliance on Supreme Court cases discussing the entry fiction doctrine is misplaced. [*See* DE 6 at 31–33 (discussing *Nishimura Ekiu v. United States*, 142 U. S. 651, 661 (1892), *Kaplan v. Tod*, 267 U.S. 228 (1925), *Leng v. Barber*, 357 U.S. 185 (1958*), Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020))]. This line of cases does not, as Respondents claim, require Petitioner be treated as an "applicant for admission" who is "seeking admission" under § 1225(b).

*Ekiu, Kaplan, and Leng May Ma* examined only whether parole (or some earlier version of

it) affected the noncitizen petitioner's legal status under the relevant statutory framework—that is, the admissibility of the noncitizen or the ability of the noncitizen to contest removal. None of these cases interpreted § 1225(b)(2), address the statutory consequences of parole under the framework after the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, or considered whether a noncitizen who has already been granted parole satisfies all of the conditions necessary for § 1225(b)(2) to apply.[4]

To be sure, the Supreme Court has held that noncitizens "who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Thuraissigiam*, 591 U.S. at 139. In addition, noncitizens seeking entry into the United States and who have not effected an entry are only entitled to the procedures authorized by Congress. *Id*. at 138–39. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."); *Mezei*, 345 U.S. 206 at (same). Yet Petitioner is *not* seeking procedures beyond that which is authorized by Congress. Petitioner's habeas claim rests on the argument that she is entitled to a discretionary bond hearing pursuant to § 1226(a). The question before the Court is one of statutory interpretation. The entry fiction is

[4] In 1892, the Supreme Court in *Ekiu*, held that releasing an inadmissible alien to a charitable organization pending a determination of her admissibility "left her in the same position, so far as regarded her right to land in the United States, as if she never had been removed from the steamship." 142 U. S. at 661. The Supreme Court's analysis in *Kaplan* focused on statutory construction, and it related to whether the Petitioner could "be deported upon a warrant issued more than five years after her entry into the United States." *Kaplan*, 267 U.S. at 230 (holding that the noncitizen had "never ... been dwelling in the United States within the meaning of the Act" and stating that the two questions presented were whether the noncitizen became a citizen by the naturalization of her father and whether she could be deported five years after entering the country). Finally, in *Leng May Ma,* the Court held that the petitioner's parole did not alter her status as inadmissible, and thus she could not apply for relief only available to noncitizens who had been admitted. 357 U.S. at 188.

therefore of no help to Respondents.[5] *See Ontiveros v. Warden Corr. Ctr. of Nw. Ohio*, No. 3:26-CV-632, 2026 WL 1109422, at *5 ("[T]he Court has serious doubts about using the entry fiction as a tool of statutory interpretation. As articulated by the Supreme Court, the entry fiction appears to be a rule for defining the constitutional due process constraints on Congress's treatment of certain immigrants.").

The Court is unpersuaded by Respondents' arguments distinguishing *Lopez-Campos.* Indeed, the plain language of the parole statute suggests that Petitioner is on equal footing with the petitioners in *Lopez-Campos.* The parole statute provides that, upon termination of parole, a petitioner's "case shall continue to be dealt with *in the same manner as that of any other applicant for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). And the process for detaining other applicants for admission within the United States is clear: "Section 1226 generally governs the process of arresting and detaining aliens once inside the United States." *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-02061-SL, 2025 WL 2959617, at *4 (N.D. Ohio Oct. 20, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)). *See Lopez-Campos*, 175 F.4th at 722 ("Put differently, § 1225(b)(2)'s mandatory detention scheme applies to certain noncitizens who seek admission into the country, whereas § 1226's permissive detention scheme applies to all other noncitizens pending a decision on their removability, with exceptions.").

True, Petitioner's status as a former parolee arguably means that she indefinitely continues

[5] Indeed, the Sixth Circuit explained that the holding in *Thuraissigiam* was "expressly constrained . . . to noncitizens 'in respondent's position,'" in other words, to noncitizens on the very threshold of entry. *Lopez-Campos*, 175 F.4th at 733–34 (explaining that the respondent in *Thuraissigiam* was "stopped and detained within only 25 yards of the border shortly after crossing it" whereas the petitioners before the court had "resided within the United States for years"). *Lopez-Campos* affirmed that *Thuraissigiam* "does not control where, like in the instant case, noncitizens have resided within the United States for years." *Id. See also Navarrete v. Noem*, No. 4:25-cv-157-DJH, 2025 WL 3298081, at *3 (W.D. Ky. Nov. 26, 2025) ("Courts in the Sixth Circuit, however, have refused to apply [the entry fiction] doctrine under § 1225 to noncitizens who have been present in the United States for extended periods.") (citing *Am.-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 667–68 (E.D. Mich. 2003)).

to be "an arriving alien." *See* 8 C.F.R. 1001(q). But just as an "'applicant for admission' is not necessarily 'seeking admission,'" *Lopez-Campos*, 175 F.4th at 732, neither is an "arriving alien." In any event, as other courts in this circuit have explained, *Lopez-Campos* stands for the proposition that "the entry fiction 'does not control' when an alien has 'resided within the United States for years.'" *Jean v. Bullock*, No. 2:26-cv-02571-BCL-ATC, 2026 WL 1531056, at *3 (W.D. Tenn. May 30, 2026). *See also Ontiveros*, 2026 WL 1109422, at *4 (finding regulatory definition of "arriving alien" unpersuasive); *Coal. For Human Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry."), *vacated on other grounds,* 185 F.4th 1275 (D.C. Cir. 2026); *Walizada v. Trump*, No. 2:25-cv-768, 2025 WL 3551972, at * 15 (D. Vt. Dec. 11, 2025) (finding it "absurd" "unjust" and "counterintuitive" that the idea that the expiration of a petitioner's parole would place him in the "perpetual status as an 'arriving alien'").

Here, while Petitioner entered the United States and was almost immediately detained, she was released, issued a Notice to Appear, put in regular removal proceedings, and was paroled for a limited time into the country. [*See* DE 6-2 at 46 ("Subjects were processed for NTAs and paroled into the U.S. pending [Section] 240 hearings")]. That parole was terminated on April 16, 2025, after which Petitioner remained in the United States. Petitioner was then arrested "pursuant to sections 236" of the INA, codified at 8 U.S.C. § 1226(a). [DE 6-4 at 50]. In sum, both Respondents' documents and the fact that Petitioner remained in the United States after her parole was terminated demonstrate that she, just like petitioners in *Lopez-Campos*, is not "seeking admission." 8 U.S.C. § 1225(b)(2). *See* 175 F.4th at 723 ("[F]or a noncitizen to be 'seeking admission' under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into

the United States via inspection and authorization by an immigration officer."); *Ismoilov v. Maydak*, No. CV 26-185-DLB, 2026 WL 1587994, at *3 (E.D. Ky. June 3, 2026) ("By remaining in the country undetected after his parole expired, Ismoilov obtained similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having knowledge of their whereabouts.").

Accordingly, consistent with this Court's prior opinion, the Court holds that § 1226(a), and not § 1225, applies to noncitizens such as Petitioner, who remain in the country after their parole ends. *See Guerra,* 2026 WL 3027146, at *3. *See also Ontiveros*, 2026 WL 1109422, at *5 (same); *Quintero v. Olson*, No. 4:26-CV-34-DJH, 2026 WL 596643, at *3 (W.D. Ky. Mar. 3, 2026) (finding petitioner was "detained under § 1226(a), not § 1225(b)(2), and is thus entitled to a bond hearing"); *Ismoilov*, 2026 WL 1587994, at *3 (finding Sixth Circuit's reasoning in Lopez-Campos applied to petitioner who had been present in the interior for more than three years and whose parole had expired).

Having determined that Petitioner's detention is governed by § 1226(a), Respondents' arguments as to the due process required by § 1225(b)(2) are futile. [*See* DE 6 at 37 ("Petitioner is not owed any more process than Congress has authorized; therefore, Petitioner has not suffered a deprivation of any procedural due process rights.")]. Like the petitioners in *Lopez-Campos*, Petitioner has "a liberty interest to be free from detention." *Lopez-Campos*, 175 F.4th at 734. Deprivation of that interest "without bond under § 1226(a) [is] a deprivation of liberty that violates [her] due process rights" and makes her continued detention unlawful. *Id.*

**B. Remedy**

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the

release of individuals stemming from ICE's illegal detention."); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) ("Release from detention is the typical remedy for unlawful executive detention.") (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). *See also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention.").

Release is not the only remedy, however. Historically, "common-law habeas corpus was, above all, an adaptable remedy," whose "precise application and scope changed depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The writ's "most extensive" role at common law was "in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Id.* at 780. In *Boumediene*, the Supreme Court made clear that, "when the judicial power to issue habeas corpus properly is invoked the judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

The Court concludes that release is necessary because Petitioner is currently being held in mandatory detention and has been for over nine months. As such, Petitioner's continued dentition, however transitory, is unlawful. Accordingly, the Court will order Petitioner's release. This is in line with the remedies fashioned by other district courts in this circuit. *See, e.g., Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering release and requiring a bond hearing before further re-detention); *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-ATC, 2025 WL 3565348, at *7 (W.D. Tenn. Dec. 12, 2025) (ordering release pending a bond hearing). Moreover, "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" where the government has articulated no legitimate interest in

detaining individuals who are neither flight risks nor dangers to the community. *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

However, the Court will not require Respondents to hold a bond hearing following Petitioner's release. *But cf. Monge-Nunez*, 2025 WL 3565348, at *7. Nevertheless, should Respondents decide to re-detain Petitioner, absent a material change in circumstances, they must provide Petitioner with a bond hearing pursuant to Section 1226(a).

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Petition for Writ of Habeas Corpus [DE 1] and motion to expedite [DE 11] and **ORDERS** the following:

(1) Respondents are directed to release Petitioner immediately because of the unlawful detention in violation of her due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket by **October 30, 2026.**

Rebecca Grady Jennings, District Judge
United States District Court

Cc: Counsel of record

October 26, 2026